1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  MRW, INC., a California
    corporation; and 500 LUTHER
12  ROAD LLC, a California
    limited liability company,
13                                    NO. CIV. S-08-1732 LKK/DAD

14          Plaintiff,

15      v.                                    O R D E R

16  BIG-O TIRES, LLC, a Nevada
    limited liability company;
17  CIT SMALL BUSINESS LENDING
    CORPORATION, a Delaware
18  corporation; and DOES 1
    through 50, inclusive,
19
            Defendants.
20  _____/

21      Plaintiffs in this case are two entities owned by the Platner

22  family: MRW, a California corporation, and 500 Luther Road ("500

23  Luther"), a California limited liability company. Plaintiffs claim

24  that defendants Big-O Tires ("Big-O") and CIT Small Business

25  Lending Corporation ("CIT") used inaccurate market data and

26  appraisal methods to induce plaintiffs to enter into an

1

1   unprofitable Big-O Tire Franchise Agreement.

2       The complaint includes four causes of action: three against

3   CIT, for (1) Intentional misrepresentation of the viability of the

4   Big-O franchise; (2) Negligent misrepresentation of the viability

5   of the Big-O franchise; and (3) Breach of fiduciary duty; and a

6   fourth against Big-O, for unfair competition in violation of

7   California Business and Professions Code § 17200.  Defendants filed

8   separate motions to dismiss, which together encompass all of

9   plaintiffs' claims.  These motions are currently before the court.

10                          **I. BACKGROUND**[1]

11      In 1999, Big-O purchased the property located at 500 Luther

12  Road in Red Bluff, California.  (Compl. ¶ 13.)  Over the next three

13  years, Big-O was unable to secure a franchisee and decided to

14  divide the property into two parcels (Parcel A and Parcel B).  (Id.

15  ¶ 14.)  Big-O obtained pre-approval from the City of Red Bluff to

16  build a "Quick Lube" on Parcel B.  (Id.)

17  In September 2002, Wayne Platner, a member of MRW and 500 Luther,

18

19      [1] The allegations are taken from the complaint, unless otherwise noted, and are taken as true for the purpose of pending motions only.

20      Defendant Big-O requests the court take judicial notice of court files relating to prior litigation and various documents

21  relating to the franchise agreement.

22      Because the court files are matters of public record, the court must grant Big-O's request for judicial notice of them.  Fed.

23  R. Evid. 201.  A court may properly consider such records in evaluating a motion to dismiss brought under Fed. R. Civ. Pro.

24  12(b)(6).  Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), abrogated on other grounds by Astoria Federal

25  Savings and Loan Ass'n v. Solimino, 501 U.S. 104 (1991).

        The court may also consider the documents related to the franchise agreement, because they are referred to in plaintiff's

26  complaint.

1  contacted Big-O regarding establishing the franchise in Red Bluff.

2  (Id. ¶ 16.)  Mr. Platner, on behalf of plaintiffs, submitted an

3  application for the Big-O franchise in Red Bluff, which was

4  approved in December 2002.  (Id. ¶ 20.)  Big-O referred plaintiffs

5  to JSM Accounting (for franchisee accounting services) and CIT for

6  an SBA loan.  (Id. ¶¶ 21-22.)

7      The franchise agreement was accompanied by a loan that would

8  enable MRW to begin operations.  Big-O informed MRW that if

9  financing the SBA loan posed any problems, Big-O would finance a

10 separate five-year loan for tires in the amount of fifty thousand

11 dollars, thereby reducing the total amount that would need to be

12 requested in the SBA loan application.  (Id. ¶ 23.)  Big-O and CIT

13 allegedly determined that leasing the property to plaintiffs was

14 not financially feasible, so proposed that plaintiffs acquire the

15 real property and equipment in a blended loan.  (Id. ¶ 24.)  Big-O

16 and CIT represented that this loan would include the acquisition

17 of (1) improvements on the property (including the building on the

18 site), (2) fee title for the entire property, (3) seventy-five

19 thousand dollars ($75,000) for working capital, tires, signs, and

20 equipment, and (4) a construction loan to build the Quick Lube.

21 (Id. ¶ 25.)

22     Plaintiffs entered into the Big-O Tires Franchise Agreement

23 for the Red Bluff property in March 2003.  The terms of the

24 approved loan fell short of the originally proposed loan; the loan

25 did not include funds for construction of the Quick Lube, it

26 provided only half of the funding designated for signs and

3

1  equipment, and it provided only fifteen thousand dollars for

2  working capital. (Id. ¶ 26.) On or about July 2003, the loan

3  closed. (Id. ¶ 28.)

4      Plaintiffs allege various acts of misconduct by CIT in this

5  process. According to the allegations, CIT falsely represented

6  that this loan was obtained pursuant to SBA guidelines, when CIT

7  knew or should have known that the underlying appraisal of the

8  property was defective, and that the guidelines were therefore

9  violated. (Id. ¶ 42, 48.) Furthermore, CIT made the false

10 representations with the intent to deceive and induce plaintiffs

11 into purchasing the Red Bluff property and entering into the

12 franchise agreement with Big-O. (Id. ¶ 44.) Plaintiffs relied on

13 CIT's representations and would not have purchased the property or

14 entered into the franchise agreement if they had not relied on the

15 defendants representations. (Id. ¶ 45.) Plaintiffs also allege

16 that CIT, as its lender, breached its fiduciary duties by

17 deliberately using inaccurate data that did not reflect the fair

18 market value of the interests being purchased. Id. ¶ 52. However,

19 plaintiff did not learn of these problems until years later.

20     After entering the franchise agreement, plaintiffs operated

21 the Big-O franchise for two and one-half years. They were unable

22 to turn a profit. (Id. ¶ 29.) Plaintiffs allege that Big-O knew

23 or should have known that the franchise would not succeed, because

24 it knew the market data was inaccurate and that the business plan

25 was faulty, (Id. ¶¶ 58-60) but that Big-O nonetheless intentionally

26 lured plaintiffs, along with other small business owners, into

4

1   franchise agreements. (Id. ¶¶ 62-63.)

2      By late 2005, the business was facing troubles.  In October
3   2005, plaintiffs retained a consultant to help re-finance or
4   renegotiate the loan.  (Id. ¶ 29.)  The consultant recommended,
5   among other things, that plaintiffs retain Coldwell Banker to place
6   the Big-O franchise and the Red Bluff property on the market.  (Id.
7   ¶¶ 29-30.)  Plaintiffs allege that Coldwell Banker placed an
8   initial value of one million seven hundred thousand dollars
9   ($1,700,000) on the combined business and property.  (Id. ¶ 30.)

10      Plaintiff's problems came to a head in two ways.  In December
11   2005, plaintiffs failed to pay the mortgage, and CIT began
12   foreclosure proceedings.  (Id. ¶ 31.)  Sometime between December
13   2005 and February 2006, Big-O began the process of terminating the
14   franchise with plaintiffs. (Compl. ¶ 32, Def. Big-O's Mot. Dismiss
15   Ex. A-3.)

16      Two prior suits dealt with plaintiff's conduct after
17   termination of the franchise agreement.  Pursuant to the Franchise
18   Agreement, upon termination plaintiff was required to, among other
19   things, cease acting as a Big-O franchise, and to discontinue the
20   use of all Big-O copyrights, trademarks, trade names, trade dress,
21   products, and services.  (Def. Big-O's Mot. Dismiss Ex. A-1 at ¶
22   20.01.)  Nonetheless, Big-O contended that following the Notice of
23   Termination, plaintiff continued to operate its franchise using the
24   Big-O name, trademarks, and trade dress.

25      On June 5, 2006, Big-O filed suit against MRW in the United
26   States District Court for the Eastern District of California

5

1  seeking to enjoin MRW's continued use of defendant's copyrights,

2  trademarks, and trade dress. (Mot. Dismiss Ex. A-4.) Big-O's

3  complaint also included a claim alleging breach of contract. (Id.)

4  In February 2007, the parties settled. (Id., Ex. A-6.) This

5  settlement was adopted before plaintiff's answer was due. (Id.,

6  Ex. A-5.) The court entered the stipulated Judgment and Permanent

7  Injunction on March 8, 2007, which prohibited plaintiff's use of

8  the Big-O name, trade dress, etc. (Id., Ex. A-7.) The stipulated

9  Judgment did not discuss Big-O's breach of contract claim, or any

10 other monetary damages to which Big-O may have been entitled. (Id.

11 Ex. A-6).

12      On May 25, 2007, Big-O filed a subsequent lawsuit against MRW

13 in the District Court for the City and County of Denver, Colorado

14 seeking money damages. (Id., Ex. A-8.) MRW moved to dismiss the

15 complaint on the grounds that defendant's claims were barred by the

16 previous lawsuit, wherein defendant sought recovery of the unpaid

17 debt via the breach of contract claim. (Id., Ex. A-9.) On

18 November 8, 2007, the Denver District Court entered an Order

19 finding that Big-O's claims for relief in the second lawsuit should

20 have been raised and resolved in the first lawsuit, and were

21 therefore barred by the doctrine of res judicata. (Id., Ex. A-10.)

22 Apparently separate from Big-O's lawsuits, in June 2006, plaintiffs

23 and CIT entered into a forbearance to make the mortgage current by

24 November 2006. (Id. ¶ 33.) The mortgage was eventually made

25 current, but CIT claimed that its attorneys' fees were immediately

26 due, requiring the parties to enter into a second forbearance.

1  (Id.)   In August 2006, in response to plaintiffs' request, CIT

2  provided the 2005 appraisal that was taken when foreclosure

3  proceedings were initiated on the franchise.   (Id.)   The 2005

4  appraisal concluded that the property was worth approximately seven

5  hundred thousand dollars with a viable business and approximately

6  five hundred thousand dollars without a viable business.   (Id. ¶

7  36.)  In March 2007, CIT finally produced the original 2003 loan

8  appraisal.  (Id. ¶ 37.)

9      In August 2007, while attempting to refinance the loan with

10  a different SBA broker, plaintiffs allege that they discovered

11  serious defects in the methodology used and conclusions made in the

12  2003 loan appraisal.   Specifically, plaintiffs allege that the

13  appraisal used inappropriate market data based on real estate in

14  Phoenix, Arizona, and significantly overstated the value of the Red

15  Bluff property.  (Id. ¶ 39.)

16                          **II. STANDARD**

17      In order to survive a motion to dismiss for failure to state

18  a claim, plaintiffs must allege "enough facts to state a claim to

19  relief that is plausible on its face."  Bell Atlantic Corp. v.

20  Twombly, 127 S. Ct. 1955, 1974 (2007).  While a complaint need not

21  plead "detailed factual allegations," the factual allegations it

22  does include "must be enough to raise a right to relief above the

23  speculative level."  Id. at 1964-65.

24      The Supreme Court recently held that Federal Rule of Civil

25  Procedure 8(a)(2) requires a "showing" that the plaintiff is

26  entitled to relief, "rather than a blanket assertion" of

                                7

1  entitlement to relief.  Id. at 1965 n.3.  Though such assertions

2  may provide a defendant with the requisite "fair notice" of the

3  nature of a plaintiff's claim, the Court opined that only factual

4  allegations can clarify the "grounds" on which that claim rests.

5  Id.  "The pleading must contain something more. . . than . . . a

6  statement of facts that merely creates a suspicion [of] a legally

7  cognizable right of action."  Id. at 1965, quoting 5 C. Wright &

8  A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d

9  ed. 2004).[2]

10     On a motion to dismiss, the allegations of the complaint must

11  be accepted as true.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).

12  The court is bound to give the plaintiff the benefit of every

13  reasonable inference to be drawn from the "well-pleaded"

14  allegations of the complaint.  See Retail Clerks Int'l Ass'n v.

15  Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  In general, the

16  Complaint is construed favorably to the pleader.  See Scheuer v.

17  Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

18  Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Nevertheless, the court

19  does not accept as true unreasonable inferences or conclusory legal

20  allegations cast in the form of factual allegations.  W. Mining

21  Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

22  ////

23  _____

24     [2] The holding in Twombly explicitly abrogates the well
    established holding in Conley v. Gibson that, "a complaint should
25  not be dismissed for failure to state a claim unless it appears
    beyond doubt that the plaintiff can prove no set of facts in
26  support of his claim which would entitle him to relief."  355 U.S.
    41, 45-46 (1957); Twombly, 127 S. Ct. at 1968.

1                              **III. ANALYSIS**

2  **A)   Defendant CIT's Motions (Plaintiff's First, Second and Third**

3       **Claims)**

4       **1)   Plaintiffs' Fraud Claims (First and Second)**

5       Defendant seeks to dismiss plaintiffs' first two claims, both

6  alleging fraud, on the grounds that plaintiffs fail to plead with

7  sufficient particularity the circumstances constituting fraud.

8       Rule 9(b) provides that "[i]n all averments of fraud or

9  mistake, the circumstances constituting fraud or mistake shall be

10 stated with particularity."  Fed. R. Civ. Pro. 9(b).  The Ninth

11 Circuit has held that "a pleading is sufficient under Rule 9(b) if

12 it identifies the circumstances constituting fraud" including "the

13 times, dates, places, benefits received, and other details of the

14 alleged fraudulent activity."  <u>Neubronner v. Milken</u>, 6 F.3d 666,

15 671-672 (9th Cir. 1993) (internal citations omitted).  The purpose

16 of this standard is to ensure that defendants are given "notice of

17 the particular misconduct which is alleged to constitute the fraud

18 charged so that they can defend against the charge and not just

19 deny that they have done anything wrong."  <u>Id.</u>

20      Plaintiffs' first cause of action, for intentional

21 misrepresentation, alleges that CIT "falsely represented to

22 Plaintiff that the Loan was obtained pursuant to SBA guidelines"

23 when CIT "knew . . . that these representations were false."

24 (Compl. ¶¶ 42, 44.)  Plaintiffs' argument is apparently that the

25 appraisal underlying the underwriting process was known to be

26 defective.   However, it is not clear to the court that this

1  allegation sufficiently identifies a particular fraudulent
2  representation, when or where this representation took place, or
3  other facts necessary to put CIT on notice of the conduct which is
4  alleged to constitute fraud. Plaintiff's discussion of defendant's
5  obstinance, in 2005, in providing a copy of the earlier appraisal,
6  while it might e the basis of an inference, does not meet Rule 9's
7  particularity requirement. Indeed, it is unclear how, or even
8  whether, the faulty appraisal or some consequence thereof was
9  communicated to plaintiffs.

10      Plaintiff's second cause of action, for negligent
11  misrepresentation, alleges "[CIT] made these representations
12  concerning the Loan to Plaintiff [without] reasonable ground for
13  believing that the representations were true," and with the intent
14  to induce plaintiffs to enter the franchise agreement. (Compl. ¶
15  48.)  This cause of action does not identify any particular
16  representations, but it incorporates by reference all preceding
17  paragraphs.  This allegation is also insufficient.

18      For the reasons set forth above, plaintiffs' first and second
19  causes of action are dismissed with leave to amend.

20      **2)   Plaintiffs' Breach of Fiduciary Duty (Third) Claim**

21      Defendant CIT moves to dismiss plaintiffs' third cause of
22  action, for breach of fiduciary duty, on the ground that defendant
23  did not owe such a duty.

24      California does not impose a fiduciary duty on lending
25  institutions with respect to borrowers:
26  ////

1
2
3
4
5

> The relationship between a lending institution and its borrower-client is not fiduciary in nature. A commercial lender is entitled to pursue its own economic interests in a loan transaction. This right is inconsistent with the obligations of a fiduciary which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another.

6  <u>Nymark v. Heart Fed. Sav. & Loan Association</u>, 231 Cal. App. 3d

7  1089, 1093 fn. 1 (1991) (citations omitted).

8      Plaintiffs seek to rely on a later passage in <u>Nymark</u>, arguing

9  that the case articulates a five-part test for when a fiduciary

10  duty is owed. This test, however, determines when a general duty

11  of care exists sufficient to support a claim for negligence, and

12  not a fiduciary duty. <u>Id.</u> at 1095. Therefore, plaintiff's third

13  cause of action is dismissed. Because a lender does not ordinarily

14  have a fiduciary duty, the court is inclined to dismiss with

15  prejudice. Nonetheless, because it is conceivable, even if

16  unlikely, that other facts would support a fiduciary claim, this

17  too will be dismissed without prejudice.

18  **B)    Defendant Big-O's Motion (Plaintiffs' Fourth Claim)**

19      Defendant Big-O argues that plaintiffs' claims are barred by

20  the prior litigation between MRW and Big-O. Defendant packages

21  this argument in two ways: (1) claim preclusion, and (2)

22  plaintiffs' current claims were compulsory counterclaims plaintiff

23  MRW failed to bring in the prior suit, pursuant to Fed. R. Civ.

24  Pro. 13(a). As explained below, both of these arguments fail.

25  ////

26  ////

1      **1)   Claim Preclusion[3]**

2          Defendant Big-O's argument for claim preclusion has a

3   superficial appeal.  Not only have MRW and Big-O already litigated

4   two cases related to the franchise, but MRW successfully asserted

5   claim preclusion against MRW in the second of those cases.

6   However, the fact that some claims between two parties are

7   precluded does not mean that all claims between them are so barred.

8   Therefore, the court turns to application of the relevant test for

9   claim preclusion.

10         The inquiry begins with a question of choice of law.  When

11  sitting in diversity, a Federal court must apply the claim

12  preclusion law of the state in which it sits.  Taylor v. Sturgell,

13  ___ U.S. ___, 128 S. Ct. 2161, 2171 n.4 (2008), see also Costantini

14  v. Trans World Airlines, 681 F.2d 1199, 1201 (9th Cir. 1982).

15  Thus, this federal court must ask what effect a California court

16  would give to the prior judgment.  California courts determine the

17  preclusive effect of prior federal judgments by following federal

18  preclusion rules.  Costantini, 681 F.2d at 1201.  Thus, the federal

19  standards for claim preclusion are applicable in the present case

20  to determine the preclusive effect of the prior federal judgment.

21  Id.

22  ───────────────────

23      [3] This court uses the term "claim preclusion" rather than the
    less precise term "res judicata." "The preclusive effect of a
24  judgment is defined by claim preclusion and issue preclusion, which
    are collectively referred to as *res judicata*." Taylor v. Sturgell,
25  ___ U.S. ___, 128 S. Ct. 2161, 2171 (2008) (internal quotations and
    citations omitted).  See also People v. Barrangan, 32 Cal. 4th 236,
26  252-253 (Cal. 2004).  The parties agree that claim preclusion,
    rather than issue preclusion, is at issue in this case.

1    Under federal law, claim preclusion applies if there is (a)

2  an identity of claims; (b) a final judgment on the merits; and (c)

3  identity or privity between parties.  FTC v. Garvey, 383 F.3d 891,

4  897 (9th Cir. 2004).

5           a)    Identity of the Claims

6    The crucial question is whether plaintiff has stated in the

7  instant suit a cause of action different from those raised in the

8  first suit.  Costantini, 681 F.2d at 1201; see also Tahoe-Sierra

9  Preservation Council, Inc. v. Tahoe Regional Planning Agency, 322

10  F.3d 1064, 1077 (9th Cir. 2003).  The Ninth Circuit determines the

11  identity of claims by applying the following criteria:

12           (1) whether rights or interest established in
              the   prior   judgment   would   be   destroyed   or
13           impaired by prosecution of the second action;
              (2) whether substantially the same evidence is
14           presented in two actions; (3) whether the two
              suits involve infringement of the same right;
15           and (4) whether the two suits arise out of the
              same transactional nucleus of facts.
16
  Costantini, 681 F.2d at 1201-1202.  The last of these criteria is
17
  the most important.  Id.; see also Cent. Delta Water Agency v.
18
  United States, 306 F.3d 938, 952 (9th Cir. 2002).  Accordingly, the
19
  court begins with this criterion.
20
           i)    Transactional Nucleus of Facts
21
    Two events are part of the same transaction if they are
22
  related to the same set of facts and could conveniently be tried
23
  together.  Western Systems, Inc. v. Ulloa, 958 F.2d 864, 872 (9th
24
  Cir. 1992).  In applying this test, the court must construe the
25
  scope of the earlier action narrowly.  Cent. Delta Water Agency,
26

1   306 F.3d at 952; see also United States v. Oregon, 470 F.3d 809,

2   816 (9th Cir. 2006).

3       In addressing the nucleus of facts test, the court in Central

4   Delta Water Agency explained that a series of prior actions, each

5   challenging small releases of water from a variety of release

6   points under the then current water management plan, did not arise

7   out of the same nucleus facts as the subsequent case, which

8   challenged a different release point, different quantities of water

9   to be released, and a new management plan. Id. at 952. As such,

10  the court held that the prior actions did not preclude the

11  subsequent lawsuit, although the cases shared many similarities.

12  Id.

13      Central Delta Water Agency drew support from Fund for Animals

14  v. Lujan, 962 F.2d 1391, 1398 (9th Cir. 1992). In Fund for

15  Animals, plaintiffs challenged the bison management practices of

16  the federal government. Id. The court held that "an action

17  challenging bison management practices five years earlier did not

18  have preclusive effect, because the earlier action challenged

19  different governmental conduct than that involved in the later

20  action, even though the harm alleged was the same." Id. at 1398.

21      Defendant Big-O's initial lawsuit against plaintiff MRW sought

22  to enforce the franchise agreement and to enjoin use of defendant's

23  trademarks (based on the franchise agreement and independent

24  theories, such as the Lanham Act). (Def's Mot. to Dismiss 11:13;

25  see also Ex. A-4.) One element implicit in these claims was the

26  validity and enforceability of the franchise agreement. However,

14

1  the allegations in that suit centered on the parties' conduct after
2  the franchise was established, and facts calling the agreement into
3  question were not implicated.  See Big O Tires, Inc. v. MRW, Inc.,
4  2006 U.S. Dist. LEXIS 54507 (E.D. Cal. 2006).

5      The present lawsuit arises out of the relationship between
6  plaintiffs and the defendant leading up to the initiation and
7  negotiation of the Franchise Agreement and the alleged
8  misrepresentations made to induce plaintiffs into entering the
9  Franchise Agreement. Specifically, the Complaint alleges that the
10 defendant recommended that plaintiff use JSM and CIT for their
11 accounting and lending needs, respectively.  (Compl. ¶¶ 21-22.)
12 Furthermore, plaintiffs have alleged that the defendant
13 represented: (1) that if financing the SBA loan presented any
14 problems it would finance a five year loan for tires in the amount
15 of $50,000; (2) that the traditional lease of the property was not
16 financially feasible and recommended that plaintiff buy the
17 property, which plaintiff subsequently did; and (3) that defendant
18 was working with CIT to ensure that plaintiff's loan would be
19 approved.  (Id. ¶¶ 23-25.)  Plaintiffs allege that these
20 representations were false, because defendant knowingly used
21 inaccurate market data, loan appraisals, and faulty business plans
22 to sell Big-O Tire franchises to the public that it knew or should
23 have known would not succeed.  (Id. ¶¶ 58-63.) However, plaintiff,
24 in this suit, does not challenge the validity of the agreement
25 itself.  Rather, plaintiff seeks damages for having been falsely
26 induced to enter the agreement.

1     In sum, although the past and present claims share the same
2  players, the operative facts underlying the particular claims
3  differ.  For the most part, the past and present claims concern
4  conduct that occurred at different times, separated by the adoption
5  of the franchise agreement.  The separation is less than what was
6  found in <u>Fund for Animals</u> and <u>Central Delta Water Agency</u>: those
7  cases considered the effect of a past suit considering similar
8  issues, but without a common thread analogous to the single
9  franchise agreement here.  Nonetheless, mindful of <u>Central Delta</u>
10 <u>Water Agency</u>'s command to construe past actions narrowly, the court
11 concludes that this factor indicates against finding identity of
12 claims.

13     **ii)  Remaining Factors in Determining Identity of**
14          **Claims**

15     Although the first factor (transactional nucleus of facts) is
16 the most important, courts have not held that it is clearly
17 dispositive as to whether claims are identical for purposes of
18 preclusion.  Therefore, this court must address the remaining
19 factors considered by Ninth Circuit cases.  These factors also
20 suggest against finding identity between the two suits' claims.

21     First, the current suit is unlikely to destroy or impair the
22 rights established in the prior suit.  <u>Costantini</u>, 681 F.2d at
23 1201-1202.  The previous case established a right for defendant to
24 not have plaintiff use defendants' trademarks.  The injunction
25 establishing this right would not be impaired by a finding that
26 defendant had engaged in unfair business practices within the scope

16

1 | of Cal. Bus. and Professions Code § 17200.  More generally, because
2 | the remedies available to a private party bringing an unfair
3 | competition claim are limited to injunctive relief and restitution,
4 | this claim could not result in rescission of the franchise
5 | agreement itself, and will not effect the results of a previous
6 | adjudication based on that agreement.

7 | Second, the current litigation is unlikely to involve
8 | substantially the same evidence.  Id.  It is likely that the
9 | Franchise Agreement would be admitted to give context to the
10 | relationship between the plaintiffs and the defendant.  However,
11 | plaintiffs' claim does not rely on the content of the Franchise
12 | Agreement or any provisions contained therein.

13 | Third, the current litigation does not involve the
14 | infringement of the same right as the previous action.  Id.  This
15 | factor is difficult to apply when the party against whom preclusion
16 | is sought was the defendant in the prior action.  Nonetheless, the
17 | rights involved plainly differ.  In the present action, plaintiffs
18 | brought suit to protect against defendant's alleged deceitful
19 | behavior and violation of California Unfair Trade Practices Act.
20 | In contrast, the First Lawsuit dealt with federal and state
21 | protections of defendant's trademarks.

22 | **iii) Together, These Factors Indicate Against**
23 | **Identity of Claims, and Therefore Against**
24 | **Claim Preclusion**

25 | Although there are some connections between the current and
26 | past suits, these connections are weak enough that each of the

17

1  factors traditionally considered in evaluating the identity of

2  claims indicates against finding such an identity.   Therefore,

3  defendant cannot satisfy the first element necessary for claim

4  preclusion; plaintiffs' current claim is not barred by claim

5  preclusion.

6          **b)    Final Judgment on the Merits and Identity or**

7                  **Privity of Parties**

8      Because defendant has failed to show identify of claims, the

9  court need not analyze whether these prongs have been satisfied.

10     **2)    Failure to Plead a Compulsory Counterclaim under Fed. R.**

11         **Civ. Pro. 13(a)**

12     Defendant Big-O's second argument for dismissal is that that

13 plaintiffs' claim should have been brought as a compulsory

14 counterclaim in the prior suit, and is therefore barred by Federal

15 Rule of Civil Procedure 13(a).   FRCP 13(a) provides that

16             a pleading must state as a counterclaim any
               claim that--at the time its service--the
17             pleader has against the opposing party if the
               claim:
18        (A)  arises out of the transaction or
               occurrence that is the subject matter of
19             the opposing party's claim; and
          (B)  does not require adding another party
20             over whom the court cannot acquire
               jurisdiction.
21

22     Defendant's argument raises three issues.   The first is

23 whether plaintiff's current claims were compulsory counterclaims

24 in the prior suit.  The second is what consequence, if any, follows

25 from failure to raise counterclaims in a suit that is resolved

26 before any responsive pleading is filed.   The final issue is

18

1  whether MRW's failure to raise a compulsory counterclaim could bar

2  500 Luther's claim in the present suit.

3           a)   **Whether The Current Claims Would Have Been A**

4                **Compulsory Counterclaim**

5           In the Ninth Circuit, whether two claims "arise out of the

6  [same] transaction or occurrence" (under FRCP 13(a)) is not the

7  same question as whether they "arise out of the same transactional

8  nucleus of facts" (for purposes of claim preclusion).[4]  A claim

9  satisfies the first description, and is thus a compulsory

10 counterclaim, if it has a "logical relationship" with the primary

11 claim.  In re Pinkstaff, 974 F.2d 113, 115 (9th Cir. 1992) (citing

12 Pochiro v. Prudential Ins. Co. of America, 827 F.2d 1246, 1249 (9th

13 Cir. 1987)); see also In re Pegasus Gold Corp., 394 F.3d 1189,

14 1195-1196 (9th Cir. 2005).

15          "A logical relationship exists when the counterclaim arises

16

17          [4] It is unclear what the difference, if any, is between these
   two tests.  Although the language used to describe them suggests
18 that they reach the same issues, and should therefore produce the
   same result, this court is not aware of any decisions discussing
19 their relation to one another.  Wright & Miller's treatise suggests
   that the test under FRCP 13(a) is broader than the test for
20 identity of claims under claim preclusion.  Wright & Miller § 1410
   ("Rule 13(a) [applies] to any counterclaim that from an economy or
21 efficiency perspective could be profitably tried with the main
   claim.").  Absent any authority indicating whether these tests are
22 the same, or the relationship between the tests, this court simply
   conducts a separate analysis of the cases interpreting FRCP 13(a),
23 and does not reach a conclusion on the relation between these
   tests.
24          One reason for this confusion may be that most cases
   interpreting FRCP 13(a) do so in the context of determining whether
25 a counterclaim is compulsory and therefore eligible for federal
   subject matter jurisdiction, rather than to determine the effect
26 of past failure to raise a counterclaim (when preclusion might also
   be an issue).

1    from the same aggregate set of operative facts as the initial

2    claim, in that the same operative facts serve as the basis of both

3    claims or the aggregate core of facts upon which the claim rests

4    activates additional legal rights otherwise dormant in the

5    defendant." In re Pegasus Gold Corp., 394 F.3d at 1196 (internal

6    citation omitted).

7        Courts applying this test have found a logical relationship

8    between claims sharing only a few facts. In Pochiro, the plaintiff

9    had previously been sued by Prudential Insurance for breach of an

10   employment contract, unfair competition, and interference with

11   business relations. 827 F.2d at 1250. These claims in the first

12   suit centered on allegations that the plaintiff, "when employed by

13   Prudential as an agent, was given confidential records about

14   Prudential's present and prospective policyholders. Then, after

15   resigning from Prudential, [he] failed to return the records to

16   Prudential and instead used them in soliciting business in

17   competition with Prudential." Id. The plaintiff (defendant in the

18   earlier suit) then filed a second suit against Prudential for

19   "unlawful restraint of trade, unfair business practices,

20   intentional interference with contractual advantage, defamation,

21   abuse of process, intentional infliction of emotional distress, and

22   tortious breach of employment contract." Id. The court held that

23   all of his claims bore a logical relation to the claims in the

24   earlier suit, and should have been raised as compulsory

25   counterclaims. The court reached this holding even for the

26   plaintiff's claim for defamation, which bore only an attenuated

1    connection to the facts in the earlier suit--plaintiff complained
2    that Prudential had called him a "crook," which the court held was
3    related to the fact that plaintiff stole records.   Id.   See also
4    Albright v. Gates, 362 F.2d 928, 929 (9th Cir. 1966) (defendant's
5    counterclaim, seeking to recover the price defendant paid for
6    allegedly worthless oil securities, was logically related to
7    plaintiff's claim that defendant had slandered him regarding sales
8    of oil securities), Wright & Miller § 1410 ("In most of the cases
9    in which a counterclaim has been held not to be compulsory it
10   appears that the claim and counterclaim were entirely unrelated.").

11       Based on the minimal level of shared facts found sufficient
12   to establish a logical relationship in Pochiro, the court concludes
13   that in this case, plaintiffs' claims against Big-O bear a logical
14   relationship with the claims in Big-O's earlier suit against
15   plaintiff MRW, and were therefore compulsory counterclaims.   Both
16   claims share a relation to the franchise agreement, and Big-O's
17   claim rested upon the validity of the franchise agreement, a "fact"
18   that "activates additional legal rights otherwise dormant," i.e.,
19   MRW's right to challenge the agreement as the result of an unfair
20   business practice. In re Pegasus Gold Corp., 394 F.3d at 1196.

21           **b)    Effect    of    Failure    to    Raise    A    Compulsory**
22               **Counterclaim When No Responsive Pleading Was Filed**
23       The Federal Rules are silent on the consequences of failing
24   to raise a "compulsory" counterclaim.   Nonetheless, courts have
25   uniformly held that a defendant who fails to raise a compulsory
26   counterclaim in compliance with FRCP 13(a) is unable to bring that

21

1    claim in a future separate suit.  See Pochiro, 827 F.2d at 1249.

2    "The purpose and design of Rule 13(a) is to prevent multiplicity

3    of litigation and to bring about prompt resolution of all disputes

4    arising from common matters."   International Brotherhood of

5    Electrical Workers v. G. P. Thompson Electric, Inc., 363 F.2d 181,

6    184 (9th Cir. 1966) (citing Southern Constr. Co. v. United States

7    ex rel. Pickard, 371 U.S. 57 (1962)); see also Wright & Miller §§

8    1409, 1407.

9         However, several courts have held that the bar to future suit

10   does not arise if the defendant in the prior action did not file

11   a responsive pleading.  The Ninth Circuit is silent on this issue.

12   However, the Fifth, Sixth, and Seventh Circuits have held that

13   "Rule 13(a) only requires a compulsory counterclaim if the party

14   who desires to assert a claim has served a pleading.  The Rule

15   requires the party to state such a claim 'at the time of serving

16   a pleading.'"   U.S. v. Snider, 779 F.2d 1151, 1157 (6th Cir. 1985)

17   (citing Lawhorn v. Atlantic Refining Co., 299 F.2d 353, 356-357

18   (5th Cir. 1962), Martino v. McDonald's System, Inc., 598 F.2d 1079

19   (7th Cir. 1979). See also Mutual Fire, Marine & Inland Ins. Co. v.

20   Adler, 726 F. Supp. 478, 482-483 (S.D.N.Y. 1989) (applying this

21   rule to claim preclusion, holding no claim preclusion against

22   defendant in prior suit when that suit was dismissed prior to

23   responsive pleading).

24        This rule is consistent with the purposes of FRCP 13(a).  The

25   contrary rule would delay settlement of issues and thereby

26   encourage waste of judicial resources.  Therefore, this court

                                    22

1  follows the rule established by the circuits that have considered

2  this issue.

3      Here, both of the parties' prior suits concluded without a

4  responsive pleading.  Defendant and plaintiff MRW settled the first

5  case by stipulated judgment prior to the time when plaintiff would

6  have been required to file an answer.  (Def. Big-O's Mot. to

7  Dismiss, Ex. A-4, A-5, A-6, A-7.)  Similarly, in the second

8  lawsuit, MRW successfully filed for a motion to dismiss Big-O Tires

9  claims and was never required to serve an answer.  (Id., Ex. A-9,

10 A-10.)  Because there was no responsive pleading in either of the

11 earlier cases, failure to plead a compulsory counterclaim in those

12 cases does not bar plaintiff's claim in the instant suit.

13                        **V. CONCLUSION**

14     For the reasons above, the court ORDERS as follows:

15 1.  Defendant CIT's motions to dismiss Plaintiffs' First, Second

16     and Third causes of action are GRANTED.

17 2.  Defendant Big-O's motion to dismiss Plaintiffs' Fourth cause

18     of action is DENIED.

19 3.  Plaintiff is granted leave to file an amended complaint

20     within 30 days of the date of this order.

21     IT IS SO ORDERED.

22     DATED:  November 25, 2008.

23

24

25     _____
       LAWRENCE K. KARLTON

26     SENIOR JUDGE
       UNITED STATES DISTRICT COURT

                            23