UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MRW, INC., a California
corporation; and 500 LUTHER
ROAD LLC, a California
limited liability company,

NO. CIV. S-08-1732 LKK/DAD

        Plaintiff,

    v.                                O R D E R

BIG-O TIRES, LLC, a Nevada
limited liability company;
CIT SMALL BUSINESS LENDING
CORPORATION, a Delaware
corporation; and DOES 1
through 50, inclusive,

        Defendants.

_____/

    Plaintiffs in this suit are two business entities, MRW, Inc.
and 500 Luther Rd., LLP.  Plaintiffs took a loan from defendant CIT
Small Business Lending Corp. ("CIT").  This loan was guaranteed by
four members of the Platner family, who in turn owned and
controlled plaintiffs.  Plaintiffs sued CIT for fraud and breach
of fiduciary duty in connection with this loan.  CIT filed a third

1

1  party complaint against the guarantors for breach of the guaranty

2  contract.  By order of October 16, 2009, the court granted summary

3  judgment to CIT on both plaintiffs' claims and on CIT's third party

4  claim.

5       Pending before the court are CIT's request for entry of

6  judgment as to the third party complaint, CIT's bill of costs, and

7  CIT's motion to enforce the fee shifting provisions contained in

8  the loan and guarantee agreements, under Fed. R. Civ. P. 58(d),

9  54(d)(1), and 54(d)(2), respectively.  The court resolves these

10  three matters on the papers and after oral argument.  For the

11  reasons stated below, all three are granted.

12                          **I.  BACKGROUND**

13  **A.   Loan and Guaranty**

14       Plaintiffs borrowed $1,172,000 from CIT.  Order of October 16,

15  2009 at 7-8, 2009 U.S. Dist. LEXIS 100785, 2009 WL 3368438 (Order

16  Granting Summary Judgment).  A portion of this loan was to be used

17  to purchase real estate, which served as a partial security for the

18  loan.  Id. at 7.  In connection with the loan approval process, CIT

19  commissioned an appraisal of the property Id.  CIT also required

20  members of the Platner family to personally guarantee the loan.

21  Id. at 8.

22       Plaintiffs defaulted on the loan in 2005.  Id. at 10.  In

23  2006, plaintiffs and the guarantors entered forbearance agreements

24  with CIT, wherein they "released any and all claims against CIT in

25  any way connected with, arising out of or related to the loan

26  documents, excluding only those claims caused solely by CIT's gross

2

1   negligence or willful misconduct." Id.  Despite these forbearance

2   agreements, plaintiffs again fell into default.  As explained in

3   the prior order,

> 4   CIT completed a nonjudicial foreclosure on the
>     real property securing the loan on March 10,
> 5   2008. At this sale, CIT purchased the real
>     property for $600,000, which CIT applied to
> 6   the outstanding amount on the loan. However,
>     even after application of the $600,000,
> 7   approximately $647,617.48 remains owing under
>     the loan documents as of September 9, 2009.

8

9   Id. at 10-11.

10  **B.   Procedural History**

11       On July 27, 2008, plaintiffs filed suit against CIT, bringing

12  claims     for     intentional     misrepresentation,     negligent

13  misrepresentation, and breach of fiduciary duty.  Plaintiffs

14  alleged that CIT misrepresented the degree to which it would comply

15  with Small Business Association lending guidelines, and that CIT

16  misrepresented, at the beginning of the loan application process,

17  the size of the loan that plaintiffs would ultimately be offered.

18  The complaint also included a claim against a second defendant, Big

19  O Tires, LLC, for breach of California's Unfair Competition Law.

20  Big O Tires and the UCL claim are not pertinent to the pending

21  matters.

22       CIT filed a motion to dismiss the three claims against it.

23  The court granted this motion, dismissing all claims against CIT,

24  but granting leave to amend.  Order of November 25, 2008, 2008 U.S.

25  Dist. LEXIS 101902, 2008 WL 5113782.  Plaintiffs filed an amended

26  complaint, which CIT also moved to dismiss.  The court dismissed

3

1  the breach of fiduciary duty claim with prejudice, but denied the

2  motion as to the misrepresentation claims.  Order of February 20,

3  2009, 2009 U.S. Dist. LEXIS 13041.

4      On March 2, 2009, CIT filed a third party complaint against

5  the four guarantors for breach of the guaranty agreement.  Counsel

6  for  plaintiffs  also  represents  the  third  party  defendant

7  guarantors.

8      In July and August of 2009, CIT propounded written discovery

9  on the plaintiffs and the guarantors.  CIT took the depositions of

10  each of the guarantors, and further deposed Wayne Platner, one of

11  the  guarantors,  in  his  role  as  the  corporate  representative  of

12  plaintiffs.

13      CIT  then  filed  two  motions  seeking  summary  judgment  on  the

14  misrepresentation and breach of contract claims.  As to the breach

15  of guaranty, the guarantors' only opposition to summary judgment

16  was to argue that success on plaintiffs' misrepresentation claims

17  would limit or offset CIT's recovery under the guaranty agreements.

18  Order on Summary Judgment at 21.  The court granted CIT's motions

19  in full by order of October 16, 2009.  Id.  The court then entered

20  judgment on plaintiffs' claims.  (Doc. No. 107.)

21      The first matter currently before the court is CIT's request

22  under Fed. R. Civ. P. 58(d) for entry of judgment as to its third

23  party complaint.  CIT seeks judgment in the amount six hundred

24  forty seven thousand six hundred seventeen dollars and forty eight

25  cents ($647,617.48), plus postjudgment interest in accordance with

26  28 U.S.C. section 1961.  The guarantors have filed an objection to

4

1   this request.  In addition, prior to filing their objection, the
2   guarantors filed a notice of appeal of the order granting summary
3   judgment.

4       The second pending matter is CIT's bill of costs under Fed.
5   R. Civ. P. 54(d)(1).  Plaintiffs and guarantors have not objected
6   to the bill of costs, which the court hereby approves.

7       Finally, CIT moves for attorney fees under Fed. R. Civ. P.
8   54(d)(2), seeking $198,971.98 in fees.  This motion is based on fee
9   shifting provisions included in the promissory note, the deed of
10  trust securing the note, the guaranty agreements, and the
11  forbearance agreement.  The court discusses the language of these
12  provisions in part II.A.2, below.

13                          **II. DISCUSSION**
14  **A.   Jurisdiction**

15      After the motion for entry of judgment, motion for costs, and
16  motion for fees were filed, plaintiffs and guarantors filed a
17  notice of appeal.  (Doc. No. 112.)  After filing this notice of
18  appeal, plaintiffs and guarantors filed oppositions to the request
19  for judgment as to CIT's claims against the guarantors and the
20  motion for fees.

21      No party has addressed the effect of this notice of appeal on
22  this court's jurisdiction.  It appears that the notice of appeal
23  was premature, in that the court had not yet entered judgment as
24  to the third party claims.  Under Fed. R. App. P. 4(a)(2), "[a]
25  notice of appeal filed after the court announces a decision or
26  order—but before the entry of the judgment or order—is treated as

                                  5

filed on the date of and after the entry."  Although the court had
entered judgment as to some of the issues decided by the order of
October 16, 2009, the court had not yet entered judgment on the
related issues discussed in the third party complaint.

In this case, the court concludes that the "entry of the
judgment" for purposes of Fed. R. App. P. 4(a)(2) requires entry
of judgment on *all* issues decided by the order.  Accordingly, the
notice of appeal will not take effect until the court enters
judgment as to the third party claim.  Otherwise, the appeal would
not be able to address the third party claim, despite the fact that
this court has nothing more to say on the issue, and further
despite the fact that the third party claim is intertwined with
plaintiffs' tort claims.

Because the notice of appeal has not yet taken effect, the
court retains jurisdiction to consider the motions for fees and
costs under Fed. R. Civ. P. 54(d)(1)-(2).

**B.   Judgment on The Third Party Claim**

CIT requests an entry of judgment as to its third party breach
of contract claim against the guarantors, in the amount of the
remaining loan balance plus postjudgment interest.

The guarantors object on the ground that when CIT foreclosed
on the property securing the loan and sold it at auction, CIT
itself purchased the property.  Guarantors argue that the property
was worth more than what CIT paid, and that as a result, CIT has
inadequately mitigated its damages.  The guarantors have not
identified any procedural defect in the foreclosure or auction.

1  The guarantors therefore object, in essence, to California's system

2  of foreclosures, and the court rejects this objection. The

3  guarantors also argue that the requested judgment is improper in

4  light of the evidence submitted in support of plaintiffs' case.

5  This evidence speaks solely to the question of liability, which has

6  already been determined. Because guarantors' objections consist

7  solely of arguments already rejected by the court, CIT's request

8  for entry of judgment will be granted.

9  **C.    Costs**

10      As noted above, plaintiffs and guarantors have not objected

11  to CIT's motion for costs. The court therefore awards costs as

12  requested.

13  **D.    Fees**

14      CIT argues that the contractual fee shifting agreements

15  entitle it to: (1) fees incurred in enforcing the loan documents

16  prior to initiation of this action, (2) fees incurred in litigating

17  CIT's breach of contract claim, and (3) fees incurred in litigating

18  plaintiffs' tort claims. Plaintiffs and guarantors do not dispute

19  that fees attributable to the first and second categories are

20  recoverable. They argue, however, that fees solely attributable

21  to the third category are not. Because CIT has not distinguished

22  between fees attributable to the second or third categories,[1]

23  _____

24      [1] While CIT's argument is structured around these three
    categories, CIT's calculation of fees only distinguishes between
    pre-litigation fees and litigation fees. In other words, CIT

25  claims $53,432.04 in fees and costs incurred prior to the filing
    of plaintiffs' complaint, and $145,539.94 in fees and costs

26  incurred after the filing of the complaint, but CIT does not

1  plaintiffs and guarantors further argue that they are unable to
2  determine the amount of fees attributed to the second category, and
3  whether this amount is unreasonable.

4      The plaintiffs and guarantors raise two arguments as to why
5  fees for defense of tort claims are not recoverable.  First, they
6  assert a statutory bar to a fee award, contending that under
7  California Civil Code section 1717, the only fee shifting
8  agreements that are enforceable are those awarding fees in an
9  action to enforce a contract.  As explained below, while Civil Code
10 section 1717 specifically pertains to fees incurred on contract
11 claims, other fee shifting agreements are enforceable under the
12 California Code of Civil Procedure.

13     Second, they assert a contractual bar to fee recovery, arguing
14 that the language of the agreements does not provide for fee
15 shifting as to the tort claims.  Again, as explained below,
16 California courts have interpreted language similar to that at
17 issue here as encompassing tort claims such as those filed by
18 plaintiffs.

19     **1.   California Law on Enforceability of Fee Shifting**
20         **Agreements**

21     California law provides two separate frameworks governing fee
22 shifting agreements, both of which render such agreements generally
23 enforceable.  The California Code of Civil Procedure provides the
24 more general framework.  California Code of Civil Procedure section

25 _____

26 further divide the second figure.

1    1021 provides that, except where specifically provided by statute,

2    parties are free to enter their own agreements regarding payment

3    of fees.   Similarly, a prevailing party may ordinarily recover

4    "costs,"  §§  1021  and  1032(b),  and  parties  may  contractually

5    designate fees as recoverable coasts, § 1033.5(a)(10).   Pursuant

6    to  these  provisions,  "[p]arties  may  validly  agree  that  the

7    prevailing  party  will  be  awarded  attorney  fees  incurred  in  any

8    litigation  between  themselves,  whether  such  litigation  sounds  in

9    tort or in contract."  <u>Santisas v. Goodin</u>, 17 Cal. 4th 599, 608

10   (1998) (quoting <u>Xuereb v. Marcus & Millichap, Inc.</u>, 3 Cal. App. 4th

11   1338, 1341 (1992)).

12        A  separate  and  more  specific  framework  is  provided  by

13   California  Civil  Code  section  1717,  which  applies  to  fee  shifting

14   agreements  relating  to  actions  "on  a  contract,"  including  actions

15   "based on" or "sound[ing] in" contract.  <u>Santisas</u>, 17 Cal. 4th at

16   617 (citing Cal. Civ. Code § 1717(a)).   Section 1717 differs from

17   the  broader  Code  of  Civil  Procedure  sections  by  providing  two

18   immutable  limits  on  covered  fee  shifting  agreements.    First,

19   section  1717  renders  all  fee  shifting  agreements  to  which  it

20   applies  bilateral,  even  when  the  agreement's  language  provides  for

21   only  one-way  or  unilateral  fee  shifting.    <u>Id.</u> at  611  (citing

22   section 1717(a)).[2]  Second, section 1717 provides that when there

23

24        [2] This mutuality applies even when a party seeks to defend a
     contract claim by arguing that the agreement is unenforcable.   A
25   party who successfully defends a contract claim by arguing that the
     contract is unenforcable may nonetheless enforce the contract's fee
26   shifting provision, if any.  <u>Santisas</u>, 17 Cal. 4th at 611.

is a voluntary dismissal, there is no "prevailing party," even when the agreement's language defines prevailing party more broadly. Id. at 617, 622-23 (quoting Cal. Civ. Code § 1717(b)(2)).  When an action falls within the scope of section 1717, section 1717 preempts application of the code of civil procedure.

Civil Code section 1717 does not prohibit enforcement of fee shifting agreements in non-contracts cases; it merely provides specific rules applicable to those fee shifting agreements that fall within its scope. Santisas, 17 Cal. 4th at 619 ("section 1717 . . . does not bar recovery of attorney fees that were incurred in litigation of [tort] claims and that are otherwise recoverable as a matter of contract law.").  The guarantors cite several cases which held that tort claims fell outside the scope of Civil Code section 1717.  Exxess Electronixx v. Heger Realty Corp., 64 Cal. App. 4th 698, 708 (1998), Childers v. Edwards, 48 Cal. App. 4th 1544, 1549 (1996), Xuereb v. Marcus & Millichap, Inc., 3 Cal. App. 4th 1338, 1342 (1992); see also Santisas, 17 Cal. 4th at 619 (Section 1717 does not apply to tort claims).[3]  Each of these cases, however, held that because section 1717 did not apply, the fee shifting agreement was governed by, and enforceable because of, the Code of Civil Procedure.  Exxess, 64 Cal. App. 4th at 708, Childers, 48 Cal. App. 4th at 1549, Xuereb, 3 Cal. App. 4th at

---

[3] Under ordinary principles of fee recovery, when an action involves both claims for which fees are and are not recoverable (such as when governed by a fee shifting agreement whose terms apply only to contract claims), fees incurred in regard to issues common to both types of claims may be recovered.

1344.[4]  Each case then turned to the agreement's terms to determine whether to award fees.

Admittedly, CIT's opening memorandum only relied upon Civil Code section 1717, without reference to the Code of Civil Procedure.  If, as the court assumes, the tort claims here do not arise under contract, this omission was an error.  Allowing CIT to now rely on the Code of Civil Procedure does not prejudice the guarantors, however, because the cases relied upon by the guarantors explain this issue, and because in this case, the differences between Civil Code section 1717 and the Code of Civil Procedure are irrelevant.  There was no voluntary dismissal in this case, so Civil Code section 1717(b)(2)'s definition of "prevailing party" is not at issue.  To the extent that the agreements were unilateral, they were unilateral in CIT's favor; CIT does not rely on section 1717(a)'s enforced bilateralism.  Although the court assumes that CIT cited the wrong provision of California law for the proposition that the fee agreements are enforceable, there is no doubt that the fee shifting agreements are enforceable under whichever framework applies.

The fee shifting agreements are enforceable.  CIT is clearly the prevailing party in this case.  The remaining questions are

---

[4] Guarantors mistakenly contend that Childers and Xuereb held that fees incurred in defense of tort claims were not recoverable. Both cases held that section 1717 did not apply, but that section 1021 did, and that fees *were* recoverable under the language of the applicable agreements.  Childers, 48 Cal. App. 4th at 1548-49, Xuereb, 3 Cal. App. 4th at 1344.  Exxess, which considered different contract language, held that fees were not recoverable. Exxess, 64 Cal. App. 4th at 708.

1   whether the fees fall within the scope of the contractual fee

2   shifting arrangements here, and whether the fees requested are

3   reasonable.[5]

4        **2.   Terms of The Fee Shifting Agreements**

5        Whether fees incurred in defense of the tort claims may be

6   recovered turns on specific language of the fee agreements.

7   <u>Exxess</u>, 64 Cal. App. 4th at 708 (citing <u>Santisas</u>, 17 Cal. 4th at

8   602, 608-609, 617, 619).   CIT's request for fees rests of four

9   contractual fee shifting provisions, which are found in the

10  promissory note, the deed of trust securing the note, the guaranty

11  agreements, and the forbearance agreement.

12       Section 6(B) of the note states that CIT may, without notice

13  and without the borrowers' consent:

14            Incur expenses to collect amounts due under
              this Note . . . [including] reasonable
15            attorney's fees and costs.

16       Paragraph 25 of the deed of trust, executed in connection with

17  the note, states that:

18            Should Beneficiary [CIT] bring any action or
              suit to enforce any of its rights or remedies
19            under the terms of this Deed of Trust,

20  _____

21       [5] In opposing this motion, guarantors have provided a "Real
     Estate Appraisal Review," which guarantors contend demonstrates
22   that plaintiffs' claims were filed in good faith.  Declaration of
     Oliver R. Gutierrez (Doc. No. 119).  Good faith is a factor in
23   determining whether to award fees under the court's inherent power,
     28 U.S.C. section 1927, or (in some instances) Federal Rule of
24   Civil Procedure 11.  <u>Fink v. Gomez</u>, 239 F.3d 989, 992 (9th Cir.
     2001) (inherent power), <u>Moore v. Keegan Mgmt. Co. (In re Keegan</u>
     <u>Mgmt. Co., Sec. Litig.)</u>, 78 F.3d 431, 436 (9th Cir. 1996) (section
25   1927), <u>Christian v. Mattel, Inc.</u>, 286 F.3d 1118, 1127 (9th Cir.
     2002) (Rule 11).  Good faith is not a factor, however, under the
26   contractual fee shifting provisions at issue here.

1            Beneficiary shall be entitled to recover its
           attorney's fees and costs.
2

3     The note and deed of trust concern the plaintiff/borrowers'

4 obligation to pay fees, and an award of fees under these agreements

5 will be against the plaintiffs.  Because the guaranty agreements

6 render the guarantors responsible for the plaintiffs' obligations,

7 however, even if fees are awarded under these agreements, the

8 ultimate effect is to award fees as to the guarantors.

9     The guaranty agreements further include a separate fee

10 shifting provision directly shifting fees on to the guarantors.

11 Section 9(a) of each of the guarantees states that:

12            Guarantor promises to pay all expenses Lender
           [CIT] incurs to enforce this Guarantee,
13            including, but not limited to, attorney's fees
           and costs.
14

15     Finally, Paragraph 13 of the Forbearance Agreement states, in
part:
16

17            If any party to this Agreement institutes a
           legal or equitable action or arbitration
18            proceeding in connection with any dispute or
           matter arising hereunder, the prevailing party
19            shall be entitled to recover its attorneys
           fees . . . .

20     CIT raises three arguments.  CIT's primary argument is that

21 defense of the tort claims was a necessary step in the "collect[ion

22 of] amounts due under [the] Note" and in the "enforce[ment]" of the

23 guaranty, such that the agreements contained in the note and

24 guarantees authorize fee awards here.  Alternatively, CIT argues

25 that even if fees are recoverable only in connection with the

26 contract claim, all fees may be attributed to this claim, because

1  plaintiffs' tort claims were raised as defenses to CIT's contract
2  claim, such that all issues were intertwined.  Finally, CIT argues
3  that the broader language of the forbearance agreement authorizes
4  fees for defense of the tort claims, because the tort claims "arose
5  under" the transaction.  The court adopts CIT's first argument, and
6  need not consider the others.

7      The guarantors argue that defense of the tort claims was not
8  an element of the "enforcement" of the loan or guaranty, relying
9  primarily on Exxess.  Exxess concerned a claim for failure to
10 disclose defects prior to entry into a real estate lease.  The
11 lease provided that the prevailing party would recover fees
12 incurred in "an action or proceeding to enforce the terms [of the
13 lease] or declare rights hereunder."  Id. at 702.  Exxess's
14 interpretation of "declare rights hereunder" is not at issue here.
15 As to enforcement, Exxess held that *plaintiffs* were not seeking to
16 enforce the lease.  Id. at 709 (citing Santisas, 17 Cal. 4th at 622
17 n.9).  *Defendant* was seeking to enforce the lease, and Exxess
18 assumed without deciding that defense of the tort claims was an
19 aspect of the enforcement.  Id. at 712.  Not all enforcement
20 efforts, however, fell within the contract's language.  Instead,
21 only expenses incurred in an "*action or proceeding* to enforce the
22 terms" were recoverable.  Id. (emphasis added).  Defendant's
23 broader enforcement efforts were not a legal or equitable action
24 or proceeding, and plaintiff's suit, although it was a legal
25 action, was not an action to enforce the lease.  For this reason,
26 defendant's request for fees was denied.  Thus, contrary to the

1  contention of plaintiffs and guarantors in this suit, <u>Exxess</u> did

2  not decide that defense of tort claims that would invalidate a

3  lease was not"enforcement" of the lease.[6]

4  　　　Where agreements have not contained such an "action or

5  proceeding" restriction, California courts have held that defense

6  of tort claims constituted "enforcement" of the contract, thereby

7  decided the issue <u>Exxess</u> merely assumed.  In <u>Wagner v. Benson</u>,

8  borrowers and their lender "agreed to compensate the prevailing

9  party for reasonable costs incurred in collecting the balance due

10 on the notes."  <u>Wagner v. Benson</u>, 101 Cal. App. 3d 27, 37 (1980).[7]

11 The borrowers brought claims for misrepresentation, negligence, and

12 bad faith concerning the initial transaction.  <u>Id.</u> at 32.  The

13 lender prevailed, and sought fees pursuant to the agreement.  The

14 court held that "the [lender's] collection efforts were

15 interrelated with its defense against the [borrower's] fraud

16 allegations," in that "[d]efense of the charge of fraud was

17 necessary in the [lender's] efforts to collect the notes."  <u>Id.</u> at

18 37.  The agreement therefore entitled the lender to fee recovery

19 as to the fraud claims.  <u>Id.</u>  The court also awarded fees incurred

20 in defense of the negligence and bad faith claims, without

21 ───────────────

22 　　　[6] Indeed, <u>Exxess</u>'s assumption favors CIT in this suit.
　　　The court notes that here, the deed of trust, unlike the note,

23 guaranty, and forbearance agreement, provides for payment of fees
incurred in an "action or suit" to enforce the deed, language

24 similar to that at issue in <u>Exxess</u>.  Because CIT is entitled to
fees under the note and guaranty, the court does not address

25 whether CIT is also entitled to fees under the deed of trust.

26 　　　[7] <u>Wagner</u> did not quote the specific language of the agreement.
The language provided above is the <u>Wagner</u> court's paraphrase.

1  discussing these claims specifically. Id. See also Nevin v. Salk,
2  45 Cal. App. 3d 331, 340 (1975).

3       Plaintiffs' tort claims in this case sought, in essence, to
4  escape the contract.  In opposing the present motion, guarantors
5  describe plaintiffs' tort claims by quoting the following language
6  from Exxess: "An action premised on fraud in the inducement seeks
7  to avoid the contract rather than to enforce it; the essential
8  claim is 'I would not have entered into this contract had I known
9  the truth.'" Exxess, 64 Cal. App. 4th at 711 (quoting Perry v.
10 Robertson, 201 Cal. App. 3d 333, 343 (1988)).  As such, defense of
11 these claims was necessary to enforcement of the guaranty (Guaranty
12 § 9(b)) and to "collect[ion of] amounts due under [the] Note,"
13 (Note § 6(a)).  Wagner, 101 Cal. App. 3d at 37.  The terms of these
14 fee shifting agreements therefore entitle CIT to recovery of fees
15 incurred in defense of plaintiffs' tort claims.

16       **3.   Reasonableness of the Fee**

17       The reasonableness of the fee request is determined in light
18 of the reasonableness of the number of hours claimed and of the
19 hourly rate.  Plaintiffs and guarantors have not argued that the
20 requested hourly rates are unreasonable.  As to the number of hours
21 worked, as noted above, plaintiffs and guarantors' sole objection
22 is that the contract claim involved relatively simple questions.
23 It appears, however, that the requested number of hours is
24 reasonable when measured against the work required to both defend
25 plaintiffs' tort claims and litigate CIT's breach of contract
26 claims.

1    As a separate issue, it appears that some expenses requested

2  as fees are also included in the request for costs.  CIT is not

3  entitled to double recovery as to these expenses.  The court

4  therefore directs CIT to file an amended statement of costs

5  eliminating any duplication.

6  **D.   Distinguishing Plaintiffs from the Guarantors**

7    As noted above, the guaranty agreements make the guarantors

8  responsible for all of plaintiffs' obligations to CIT.  Insofar as

9  the instant motion for fees is itself a motion for enforcement of

10 a contract, it is appropriate to conclude that under the guaranty

11 contract, guarantors are liable for fees owed by plaintiffs.

12                    **III. CONCLUSION**

13    For the reasons stated above, the guarantors' objections to

14 entry of judgment are overruled.  CIT is entitled to recover

15 attorney's fees incurred in pre-litigation enforcement of the loan

16 and guaranty, in litigation of CIT's breach of contract claim, and

17 in CIT's defense of plaintiffs' tort claims.  To the limited extent

18 that plaintiffs and guarantors argue that the requested fees are

19 unreasonable, these objections are overruled.

20    The court therefore orders as follows:

21    1.   CIT's request for entry of judgment, Doc. No. 104, is

22         GRANTED.  The clerk of the court is directed to enter

23         CIT's proposed judgment, Doc. No. 105.

24    2.   CIT's request for costs, as specified in Doc. No. 109,

25         is GRANTED.

26    3.   Within 14 days of the date of this order, defendant and

1         third party plaintiff CIT SHALL file an amended

2         calculation of fees that excludes amounts separately

3         awarded pursuant to the bill of costs, Doc. No. 109.

4         Within 7 days thereafter, plaintiffs and guarantors MAY

5         file an objection to this amended calculation.

6         Objections may be made *solely* on the ground that

7         expenses included in the calculation of fees were

8         previously included in the calculation of costs.

9  IT IS SO ORDERED.

10  DATED:  January 14, 2010.

13  LAWRENCE K. KARLTON
   SENIOR JUDGE
14  UNITED STATES DISTRICT COURT

18